# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.J. and A.A.**

**No. 20-0431** (Randolph County 19-JA-88 and 19-JA-89)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.Y., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's February 25, 2020, order terminating her parental rights to B.J. and A.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and in denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed an abuse and neglect petition alleging that law enforcement, while executing a search warrant on her home, witnessed petitioner attempt to hide a bag under B.J. Officers searched the bag and found methamphetamine, half of an unidentified pill, and drug paraphernalia. During law enforcement's search, they contacted the DHHR to respond to the home. According to the DHHR, the home smelled of raw sewage that had backed up into the residence. The DHHR also found razor blades and a large jug of bug killer on the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

floor that were both easily accessible to the children. Petitioner asserted that the home was clean before law enforcement arrived, as she accused them of "ma[king] the mess." This was contradicted by statements from A.A., then fifteen years old, who described the residence as "gross" and reported that petitioner never cleaned the house. According to A.A., she was required to clean and prepare food for herself and B.J. A.A. also indicated that petitioner sold food stamps to buy drugs, described petitioner having taken her along when petitioner traded stolen goods for drugs, and confirmed that she witnessed petitioner abusing drugs. Petitioner was arrested as a result of law enforcement's search and denied that the drugs in the home were hers, although she admitted to illegally purchasing Suboxone. Petitioner also admitted to a substance abuse problem that began when she was sixteen years old. After her arrest, petitioner was released on bond and required to report to community corrections, at which point she tested positive for methamphetamine and Suboxone. Following the petition's filing, petitioner waived her preliminary hearing.

At the time of the adjudicatory hearing in September of 2019, petitioner was again incarcerated. During the hearing, the circuit court accepted petitioner's written stipulation to abusing and neglecting the children due to her substance abuse and found her to be an abusing and neglecting parent. The same day as the hearing, petitioner filed a motion for an improvement period. In December of 2019, the circuit court held a hearing on petitioner's motion for an improvement period, during which it found that petitioner failed to satisfy her burden of establishing that she was likely to fully comply with the terms thereof. According to the circuit court, which also presided over her ongoing criminal case, petitioner violated the terms of her bond and probation, which resulted in her being incarcerated until November 7, 2019. The court also noted that petitioner was required to submit to drug screens which involved "a daily obligation and a[] simple procedure." Despite this order, petitioner failed to participate in that program. Although petitioner testified that she would participate in an improvement period, the court found that her demonstrated refusal to follow court orders established that she was unlikely to fully participate in an improvement period. Accordingly, the court denied petitioner's motion.

In February of 2020, the circuit court held a dispositional hearing, during which it found that A.A. expressed a desire not to see petitioner. The court also addressed petitioner's request to transfer legal guardianship of B.J. to his foster parent, finding that such an arrangement was not in the child's best interests because it did not provide permanency. Instead, the court found that adoption would best serve B.J.'s need for an assured maternal presence. Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, the court terminated petitioner's parental rights and denied her request for post-termination visitation.[2] It is from the dispositional order that petitioner appeals.

---

[2] B.J.'s father's parental rights were also terminated below, and the permanency plan for that child is adoption in the current foster home. According to respondents, A.A.'s father successfully completed an improvement period, the child was returned to his custody, and the matter against him was dismissed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that she should have been entitled to an improvement period because she established that she was likely to fully comply with the terms and conditions thereof. Petitioner is correct that, in order to obtain an improvement period, a parent must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). According to petitioner, she satisfied this burden by repeatedly acknowledging her abuse and neglect of the children and taking steps to correct it. We note, however, that acknowledgement of the conditions of abuse and neglect at issue is not determinative of whether a parent has satisfied the applicable burden. Although a failure to acknowledge such conditions can disqualify a parent from obtaining an improvement period, petitioner's acknowledgment certainly did not establish that she was entitled to an improvement period. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted) ("Failure to acknowledge the . . . truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making . . . an improvement period an exercise in futility at the child's expense.").

In further support of this assignment of error, petitioner cites to her self-serving testimony at the September of 2019 adjudicatory hearing, a time when she was incarcerated, to establish that she saw a substance abuse counselor while incarcerated and intended to submit to drug rehabilitation treatment upon her release. What petitioner fails to acknowledge, however, is that this evidence does not speak to the likelihood that she would substantially comply with an improvement period. Instead, this evidence clearly demonstrated that she was unlikely to comply, given that after her release from incarceration in September of 2019 she was later reincarcerated for violating the conditions of her bond by using drugs. Petitioner further cites to her testimony from the hearing in December of 2019 to establish that she was submitting to drug screens, participating in community service, obtained housing with her mother, and sought substance abuse treatment. According to the record, several of these activities were required by petitioner's probation. Further, while it may be true that petitioner was submitting to drug

screens as a term of her probation, an individual from community corrections testified that petitioner was not calling in daily to submit to the screens ordered in the abuse and neglect matter. On appeal, petitioner argues that the circuit court "ignored the fact that it was impossible for [her] to call while incarcerated," but this assertion is belied by the record. The transcript from the hearing on petitioner's motion contains multiple references to the timeline of petitioner's various arrests and incarcerations, and the DHHR was clear in questioning witnesses about petitioner's failure to call for drug screens during periods when she was released from incarceration. Further, a witness testified that petitioner missed four check-ins and two screens in the brief period between her most recent release from incarceration on November 7, 2019, and the hearing on the motion for an improvement period on December 2, 2020.

Based on the foregoing, we find no abuse of discretion in the circuit court's denial of petitioner's motion for an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Indeed, the circuit court was presented with petitioner's testimony as to her brief compliance with the terms of her probation upon her most recent release, her other efforts to undergo services designed to remedy the conditions of abuse and neglect at issue, and her willingness to participate in an improvement period and found this testimony lacking. We decline to disturb this credibility determination on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). This is especially true in light of the circuit court's explicit weighing of petitioner's testimony against her prior noncompliance with its orders, including her failure to participate in drug screens as ordered as recently as the weeks leading up to the hearing on petitioner's motion. As such, we find petitioner is entitled to no relief.

Petitioner relies on this same evidence to argue that it was error to find that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect and to use this finding as a basis to deny her request to place the children in a legal guardianship. According to petitioner, this less-restrictive dispositional alternative was in the children's best interests. We find, however, that the record does not support this assertion.

According to petitioner, there was no evidence offered to establish that continuing the children in a legal guardianship would be detrimental to their best interests. We find, however, that this assertion is factually inaccurate. Based on extensive evidence concerning the children, including testimony from B.J.'s foster parent, the circuit court specifically found, with respect to B.J., that "[l]egal guardianship does not provide assurance in permanency" and that the child and his foster mother needed such assurance. The court further found that adoption best protected the child's best interests because it would provide stability for the child. This is in keeping with this Court's directive that,

> [i]n determining the appropriate permanent out-of-home placement of a
> child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give

priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Further, in regard to child A.A., petitioner asserts that termination of her parental rights was overly restrictive, given that the child was placed with her father. However, petitioner ignores this Court's prior direction that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). In short, petitioner's arguments regarding a less-restrictive dispositional alternative are unavailing, given the court's findings.

While petitioner argues that the circuit court lacked sufficient evidence to find that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future, we find no error. As the record shows, petitioner failed to take the meager step of complying with a simple process of submitting to drug screens during the proceedings and, in fact, was incarcerated for conduct directly related to the issues for which she was adjudicated. According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes when the parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Therefore, we find that petitioner's assertion that the court erred in making this finding is without merit.

Finally, West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate a parent's parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the child's welfare. As set forth above, the court made these findings upon substantial evidence. Further, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the detailed findings set forth above, we find that petitioner is entitled to no relief in regard to her assignment of error concerning the circuit court's termination of her parental rights.

In support of this assignment of error, petitioner also asserts, without citation to the controlling authority, that the DHHR was required to present evidence clearly demonstrating that the children at issue requested termination of her parental rights in order for the court to impose this disposition. This argument is flawed for several reasons. First, the DHHR is not required to present evidence in all cases that each individual child wishes for a parent's rights to be terminated in order for a court to order such termination. Rather, according to West Virginia Code § 49-4-604(c)(6)(C), in terminating a parent's parental rights, "the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." This statute simply requires that a court consider the children's wishes when they are of appropriate maturity, which the circuit court here did. While petitioner argues that the DHHR and guardian's discussion of A.A.'s wishes was "woefully short in providing the information necessary to deny [p]etitioner['s] request for a less[-]restrictive alternative" to termination, we find that the child could not have been more explicit about her desire to end her relationship with petitioner. As the court specifically found, A.A., then fifteen years old, expressed that she "does not wish to see her mother." Petitioner additionally cites to testimony concerning B.J.'s desire to see her, but ignores the fact that the child was only eight years old at the time—far below the threshold age for consideration of his wishes as contemplated by the statute at issue. As such, petitioner is entitled to no relief on appeal for any argument based on her vague assertions that the children's wishes were somehow insufficient to allow for termination of her parental rights.

Petitioner relies on these same factual arguments about the children's wishes to assert that the circuit court erred in denying her post-termination visitation with the children. As this Court has held,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Obviously, A.A.'s express desire not to see petitioner evidences a lack of a close emotional bond such that post-termination visitation with her would not have been appropriate. As to B.J., while it may be true that the child asked his foster mother about petitioner and requested to see her, the foster mother also testified to the child's negative feelings toward petitioner because he perceived that she neglected him. The foster mother also raised concerns that continued contact with petitioner could harm B.J., given his past of having been moved from home to home. Essentially, the foster mother testified that stability was important for B.J., and the circuit court agreed. As such, we find no error in the denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 25, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison